1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EUSTACE DE SAINT PHALLE, SBN 179100
JOSEPH R. LUCIA, SBN 278318
RAINS LUCIA STERN, PC
220 Montgomery Street, 15th Floor
San Francisco, CA 94104
Tel: (925) 609-1699
Fax: (925) 609-1690
E-mail: Personalinjurygroup@RLSlawyers.com

Attorneys for Plaintiffs
KELLIE SMITH, individually; as personal
representative of the Estate of THOMAS
SMITH, JR., Decedent; and as Guardian Ad
Litem for S.S., a minor

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLIE SMITH, individually; KELLIE SMITH, as personal representative of the Estate of THOMAS SMITH, JR., Decedent; and KELLIE SMITH, as Guardian Ad Litem for S.S., a minor;<br><br>Plaintiffs,<br><br>v.<br><br>BAY AREA RAPID TRANSIT DISTRICT; KENTON RAINEY, individually and in his official capacity as CHIEF OF POLICE for BAY AREA RAPID TRANSIT DISTRICT; BENSON FAIROW individually and in his official capacity as DEPUTY CHIEF OF POLICE for BAY AREA RAPID TRANSIT DISTRICT; MICHAEL MAES individually and in his official capacity as DETECTIVE for BAY AREA RAPID TRANSIT DISTRICT; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.<br><br>**COMPLAINT FOR DAMAGES for:**<br><br>**1) Violation of Civil Rights (42 U.S.C. §1983) – BART Custom and Policy - Failure to Utilize SWAT Teams for Tactical Situations**<br>**2) Violation of Civil Rights (42 U.S.C. §1983) – BART Custom and Policy - Failure to Ensure Officers Were Properly Trained for Tactical Situations**<br>**3) Interference with Constitutional Rights (Bane Act – Cal. Civil Code §52.1)**<br>**4) Violation of Civil Rights (42 U.S.C. §1983) - Unreasonable Seizure; Unlawful Use of Deadly Force**<br>**5) Wrongful Death (Cal. Code of Civil Procedure § 377 *et seq.*)**<br><br>**Claim for Exemplary Damages**<br><br>**DEMAND FOR JURY TRIAL** |

## GENERAL ALLEGATIONS

Plaintiffs KELLIE SMITH, individually; KELLIE SMITH, as personal representative of

the Estate of THOMAS SMITH, JR., Decedent; and KELLIE SMITH, as Guardian ad Litem for

S.S., a minor, allege generally against all Defendants and DOES 1 through 10, inclusive, and each of

-1-

them as follows:

1. The entirety of this Complaint is pled upon information and belief. Each allegation is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

2. One of the primary functions of a law enforcement agency is to ensure public and officer safety. The duties of law enforcement carry inherent risks that are unique to the profession. These risks are best managed by training, which is the most important tool to ensure officer safety. It is training on policies, procedures and safe practices that creates repetition and consistency, which results in predictable and expected outcomes in various situations. A failure to follow proper policies and procedures and/or to receive proper training can result in the death of an officer or a member of the public.

3. Executive level management of any law enforcement agency has a duty to the public and all officers it puts in potentially life threatening situations, including any potential tactical situation, to ensure that all officers are properly trained on safe and best practices. This is not simply an obligation to offer training, but to ensure that it gets done. Executive level management must create a culture within the department that promotes unity, a desire to be trained, and to seek training when an officer believes it is necessary for officer and public safety.

4. BART PD and its executive level management failed to adhere to these vital obligations and principles, which placed officers' lives at risk. Following the appointment of Chief Kenton W. Rainey and Deputy Chief Benson Fairow, the number of probation, building and parole searches drastically increased compared to the prior management. As the number of searches increased, BART management began deemphasizing the use of SWAT and other tactical units which were primarily responsible for conducting those searches in the past. This practice, custom and policy led to increased searches being conducted by understaffed and undertrained units of BART PD. These changes – more dangerous tactical assignments with less training and supervision – dramatically increased the risk of critical errors during BART tactical assignments.

5. Detective Sergeant Tommy Smith's detective unit was the primary unit that was now being directed to conduct tactical searches of buildings. Unfortunately, the detective unit was not

then provided the specialized tactical training that was required to complete these duties safely, but which was made available to other tactical units. The detective unit lacked the resources, training and experience to safely conduct these tactical searches.

6.      Detective Sergeant Tommy Smith and others within the BART PD realized this as a significant officer safety problem and on multiple occasions requested that management provide its officers with appropriate training and/or utilize appropriate personnel to conduct these searches. These repeated requests for training and tactical assistance were summarily denied. In many instances, these denials were done in a disparaging and insulting manner intended to discourage requests for training.

7.      On January 21, 2014, the concerns and fears of so many within the BART PD came true. Detective Sergeant Tommy Smith led a team of officers in a probation search of an apartment in Dublin, California. As Detective Sergeant Smith emerged from one of the rooms, another officer, Detective Michael MAES, mistook Detective Sergeant Smith for an armed criminal, and fired a single shot at Detective Sergeant Smith striking him in the torso. Detective Sergeant Smith was rushed to the hospital and efforts were made to save his life, but the bullet wound proved to be fatal.

8.      During the search, the team of officers made a number of tactical errors that are routinely addressed during tactical training - the very type of training that Detective Sergeant Smith himself requested and was denied on multiple occasions. Following this tragic death, BART realized flaws in its policies, customs, practices and training, and began sending officers to specialized tactical training. This was the very type of training that Detective Sergeant Smith himself requested and was denied on multiple occasions.

9.      Detective Sergeant Smith leaves behind a wife and young daughter who bring this civil rights action under 42 U.S.C. § 1983. Plaintiffs, the Estate and heirs of THOMAS SMITH, JR., seek compensatory damages against Chief Kenton Rainey, Deputy Chief Benson Fairow, Detective Michael MAES, the Bay Area Rapid Transit and other employees of the Bay Area Rapid Transit District Police Department for the intentional, reckless and despicable shooting of Detective Sergeant Smith and the unconstitutional policies, practices and customs of the Bay Area Rapid Transit District which caused the violation of the decedent's Fourth and Fourteenth Amendment rights.

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

JURISDICTION AND VENUE

10.     Jurisdiction is vested in this Court under 28 U.S.C. §1343 for violations of the 1871 Civil Rights Enforcement Act, as amended, including 42 U.S.C. §1983 and section 1367(a). Venue lies in the Northern District of California, the judicial district in which the claim arose pursuant to 28 U.S.C. §1391(a) and (b).

11.     Plaintiffs timely filed a claim against Defendants on July 21, 2014 pursuant to Government Code §910, and said claim was rejected by Defendant BART on September 9, 2014.

12.     The parties reached an agreement to toll the deadline to file a civil complaint to June 1, 2015.

PARTIES

13.     Plaintiff KELLIE SMITH is the surviving wife of the Decedent, THOMAS SMITH, JR. Plaintiff KELLIE SMITH is a citizen of the United States and resident of the County of Contra Costa, State of California. Plaintiff KELLIE SMITH brings this suit in her capacity as an individual, as well as in other capacities, as set forth below.

14.     Plaintiff KELLIE SMITH is the successor in interest to Decedent THOMAS SMITH, JR., who died on January 21, 2014. Plaintiff KELLIE SMITH, as surviving wife of the Decedent, THOMAS SMITH, JR., is the personal representative of the Estate of Decedent, THOMAS SMITH, JR. and is entitled to bring the causes of action herein alleged pursuant to section 377.30 of the California Code of Civil Procedure. (Attached hereto is a declaration designating KELLIE SMITH as a successor in interest to THOMAS SMITH, JR., and a true and correct copy of the original death certificate for THOMAS SMITH, JR. as required by C.C.P. §377.32.)

15.     Plaintiff KELLIE SMITH also brings suit as the Guardian ad Litem of S.S., a minor child. S.S. is the natural offspring of decedent THOMAS SMITH, JR. and plaintiff KELLIE SMITH. S.S. is represented herein by her Guardian Ad Litem, KELLIE SMITH. S.S. is a resident of the County of Contra Costa, State of California.

16.     Defendant BAY AREA RAPID TRANSIT DISTRICT (hereinafter "BART"), was, and is, a public entity duly organized and existing as such under the laws of the State of California.

-4-

1  The Bay Area Rapid Transit District Police Department (hereinafter "BART PD") is an agency of

2  Defendant BART.

3       17.    At all times mentioned herein, Defendant KENTON RAINEY was the Chief of

4  Police of the BART PD and is responsible for implementing, maintaining, sanctioning or condoning

5  the policies, practices and customs of the BART PD and was employed by Defendant BART.

6  Plaintiffs sue Defendant KENTON RAINEY in both his official and individual capacity.

7       18.    At all times mentioned herein, Defendant BENSON FAIROW was the Deputy

8  Chief of Police of the BART PD and is responsible for implementing, maintaining, sanctioning or

9  condoning the policies, practices and customs for the BART PD and was employed by Defendant

10  BART. Defendant BENSON FAIROW is sued in both his official and individual capacity.

11       19.    At all times mentioned herein, Defendant MICHAEL MAES was a Police Detective

12  with BART PD and was employed by Defendant BART. Plaintiffs sue Defendant MICHAEL

13  MAES in his official capacity as a BART PD employee.

14       20.    Plaintiffs are unaware of the true names and capacities of those Defendants sued

15  herein as a DOE Defendants. Plaintiffs will amend this complaint to allege said Defendants' true

16  names and capacities when that information becomes known to them. Plaintiffs are informed,

17  believe, and thereon allege that these DOE Defendants are legally responsible and liable for the

18  incident, injuries and damages hereinafter set forth, and that each of said Defendants proximately

19  caused the injuries and damages by reason of neglect, careless, deliberately indifferent, intentional,

20  willful or wanton misconduct, including the negligent, careless, deliberately indifferent, intentional,

21  willful or wanton misconduct in creating and otherwise causing the incidents, conditions and

22  circumstances hereinafter set forth, or by reason of direct or imputed negligence or vicarious fault or

23  breach of duty arising out of the matters herein alleged. Plaintiffs will seek leave to amend this

24  complaint to set forth said true names and identities of the unknown named DOE Defendants when

25  they are ascertained.

26       21.    Plaintiffs are unaware of the names of any other individuals at BART, BART PD, or

27  elsewhere who took part in creating, authorizing, and/or ratifying the policies, practices, procedures,

28  and customs of BART PD complained of herein. Plaintiffs will seek leave to amend this complaint

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

1   to set forth said true names and identities of the unknown named DOE Defendants when they are

2   ascertained.

3        22.    Plaintiffs are informed, believe, and therefore allege that, at all times herein

4   mentioned, each of the Defendants was the agent and/or employee and/or co-conspirator of each

5   of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the scope

6   of such agency, employment and/or conspiracy and with the permission and consent of other co-

7   defendants.

8        23.    At all times herein mentioned, Defendants KENTON RAINEY, BENSON

9   FAIROW, MICHAEL MAES and DOES 1 through 10, and each of them, were duly appointed

10   police officers, ranking officers and employees of the Defendant BART and the BART PD, and

11   were at all times acting under color of law as the employee, agent and representative of each and

12   every other defendant. Defendant BART is vicariously liable under California Government Code

13   §815.2(a) for any and all wrongful, illegal and unconstitutional acts hereinafter complained of

14   committed by the individual defendants employed by Defendant BART.

15                 **EVENTS GIVING RISE TO THIS COMPLAINT**

16        24.    Following the 2009 New Year's Johannes Mehserle shooting of Oscar Grant, the Bay

17   Area Rapid Transit ("BART") Police Department ("PD") was subject to intense public criticism and

18   scrutiny. The controversy surrounding the Oscar Grant shooting led to the approval of citizen

19   oversight, a number of department reviews and the implementation of multiple reforms. One of the

20   audits was conducted by the National Organization of Black Law Enforcement Executives

21   ("NOBLE") which drafted what is known as the "NOBLE Report." One of the recommendations

22   of the NOBLE Report was to disband BART PD's SWAT unit to create departmental cost savings.

23        25.    The department was in a transformational phase where it was the goal of the BART

24   PD to be recognized as a professional and competent law enforcement agency. On July 1, 2010,

25   Defendant Chief Rainey was sworn in as the BART Chief of Police and was considered to be a

26   leader who could restore the BART PD's image and achieve improved policing services by

27   implementing mandated reforms and changes.

28        26.    In 2011, Chief Rainey hired Deputy Chief Fairow as part of his goal to make an

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

organizational change to the BART PD. Deputy Chief Fairow came from Oakland PD and brought

along with him the background of a 25-year law enforcement veteran who had significant experience

as a Special Weapons and Tactics ("SWAT") team operator, SWAT team leader, and SWAT team

commander. Deputy Chief Fairow had knowledge and had received training in many tactical areas

that exceeded what many BART officers had received.

27.     Deputy Chief Fairow was appointed to Deputy Chief of Operations and began

attempts to implement changes in department operations. One of the most significant changes

appeared to be the de-emphasis of SWAT.  Such action would not only allow executive level

management to prove that they were in compliance with the NOBLE Report's recommendations,

but that they also saved departmental costs by eliminating costs for training, overtime and equipment

expenses.

28.     Prior to the Chief Rainey and Deputy Chief Fairow era, probation, building and/or

parole searches were done very infrequently. This was not only the case for the Detective Unit, but

for the department as a whole. During the Rainey/Fairow era, officers and detectives were pressured

to accomplish probation searches, causing the number of searches to drastically increase. However,

the majority of the officers and detectives that were now in charge of conducting these searches were

not provided the requisite training to perform these searches pursuant to safe police practices.

29.     Detective Sergeant Smith took efforts to keep the Detective Unit from conducting

probation searches without proper supervision or training. Detective Sergeant Smith had a number

of conversations with Deputy Chief Fairow advising him that the Detective Unit should not be

conducting probations searches without receiving the proper and necessary training to safely conduct

these searches. Deputy Chief Fairow was also advised by Detective Sergeant Smith, and other BART

personnel, that SWAT and/or other tactical units should be involved in these types of searches.

30.     BART executive level management denied these training requests and requests for

assistance from specially trained units. In particular, Defendant Fairow denied training and

denigrated officers when requests for training and/or involvement of tactical teams were discussed.

Defendant Fairow would respond by stating things including, but not limited to, that it was all

"bullshit" and that they were "pussies" because officers received training like this in the police

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

1   academy. Detective Sergeant Tommy Smith never received any of the specialized building search

2   training he requested.

3       31.     On January 21, 2014, Detective Sergeant THOMAS SMITH, JR. assembled a team to

4   conduct a search of an apartment unit at 6450 Dougherty Road, Unit 1714, Dublin, CA 94568. This

5   apartment unit was associated with a suspect, John Henry Lee, who was believed to be responsible

6   for a number of crimes including robbery, burglary, possession of a loaded firearm, possession of a

7   stolen vehicle, and evading arrest. It was confirmed that Mr. Lee was on active Alameda County

8   Probation with an associated four way (person, vehicle, property, residence) search clause.

9       32.     Detective Sergeant THOMAS SMITH, JR.'s search team consisted of both

10  Defendant BAY AREA RAPID TRANSIT DISTRICT personnel, detectives and uniformed patrol

11  officers and two uniformed officers from Dublin Police Services.

12      33.     The entry team was "stacked" at the front of the door and was preparing to provide a

13  "Knock Notice." Detective Sergeant Smith, the supervisor, was the first person in the stack.

14  Detective Sergeant Smith knocked on the door and announced "police." Detective Sergeant Smith

15  stated that he heard someone inside the residence and continued to knock loudly on the door and

16  announce the police's presence.

17      34.     The door into the apartment was unlocked. Detective Sergeant Smith opened the

18  front door, stepped inside and Detective MAES announced "Police. Probation Search." The entry

19  team then entered the home through the unlocked door and began clearing the residence for

20  possible suspects. Detective Sergeant Smith went to the left and the other officers moved to the right

21  and straight into the apartment.

22      35.     Detective MAES stopped near the entrance of a bedroom, with his flashlight in his

23  left hand and gun in his right hand, and scanned the bedroom. Detective MAES noticed a dark

24  closet to the left. Detective MAES then saw a shadowy figure holding a firearm emerge from the

25  dark closet area. MAES observed the gun raised in the air in a parallel position, but not pointing in

26  the direction of MAES. With no warning or retreat, Detective MAES fired a single shot at the

27  shadowy figure.

28      36.     This "shadowy figure" was Detective Sergeant Smith, who had circled through the

laundry/bath area and was entering the bedroom. Detective Sergeant Smith fell to the ground. He was rushed to the hospital where he was later pronounced dead.

37.     On January 22, 2014, Dr. Thomas Beaver performed an autopsy on the body of Detective Sergeant Smith. The cause of death was a gunshot wound to the chest.

38.     The Alameda County District Attorney's office, in conjunction with the Alameda County Sheriff's Office (Dublin Police Services), conducted a criminal investigation of this Officer Involved Shooting ("OIS"). The Alameda County DA's criminal investigation concluded that none of the team's members knew ahead of time whether someone other than Mr. Lee might be present in the apartment. No one had previously ascertained what the apartment's interior floor plan looked like. Finally, the evidence appears to show that neither Detective Sergeant Smith nor Detective MAES uttered a single word inside the apartment that might have alerted either one to the presence of the other before the fatal shot was fired.

39.     After the shooting death of Detective Sergeant Smith, BART determined that their officers needed better training in conducting building searches. Following this shooting, BART PD started sending some of its members to the Alameda County Regional Training Facility for building search entry training. However, BART continues its practice of not requiring all officers to be tactically trained, and not automatically approving tactical training on officers' requests.

**FIRST CAUSE OF ACTION – Violation of Civil Rights (42 U.S.C. §1983) – BART Custom and Policy - Failure to Utilize SWAT Teams for Tactical Situations**
**(Against Defendants BAY AREA RAPID TRANSIT DISTRICT; KENTON RAINEY; BENSON FAIROW and DOES 1-10)**

40.     Plaintiffs KELLIE SMITH, individually; as personal representative of the Estate of THOMAS SMITH, JR., Decedent; and as Guardian Ad Litem for S.S., a minor, incorporate by reference paragraphs 1-39 above as though fully set forth herein.

41.     At all times mentioned herein, Defendants RAINEY; FAIROW; and DOES 1-10, and each of them, acted as supervisors in connection with the probation search of January 21, 2014, which resulted in the unlawful, illegal and unconstitutional killing of THOMAS SMITH, JR.

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

1  Defendants, and each of them, had the authority to set policies, procedures, customs, and practices

2  at BART PD related to the conduct of searches, including, but not limited to building, probation

3  and parole searches. Defendants, and each of them, had the authority to set policies, procedures,

4  customs and practices at BART PD related to search teams, including but not limited to the

5  supervision, training and selection of members. Defendants, and each of them, actively participated

6  in the supervision of the officers involved in the planning, instruction, direction, deployment

7  regarding building, probation and parole searches.

8      42.    At all times mentioned herein, Defendants RAINEY; FAIROW; and DOES 1-10,

9  and each of them, had a duty to properly instruct, supervise, train, plan, direct, oversee and

10  discipline the BART PD personnel that were involved in the subject probation search.

11      43.    Defendants RAINEY; FAIROW; and DOES 1-10, and each of them, were active

12  participants in the probation search. Defendant RAINEY; FAIROW; and DOES 1-10, and each of

13  them, acted, and failed to act, in a manner that was reckless and amounted to a callous or deliberate

14  indifference to the constitutional rights of THOMAS SMITH, JR. The acts and omissions of

15  Defendants, and each of them, proximately caused the death of THOMAS SMITH, JR. and the

16  damages complained of herein.

17      44.    Defendants RAINEY; FAIROW; and DOES 1-10, and each of them, in their

18  capacity as managers, supervisors, and commanding officers with personal involvement in

19  establishing BART PD's policies, procedures, customs and practices, and in directing subordinates

20  and in setting in motion a series of acts, knew, or should have known, that their subordinates were

21  likely to inflict constitutional injury to THOMAS SMITH, JR. or anyone else in the residence. The

22  wrongful acts and omissions by the supervisors include, but are not limited to, the following:

23          a.    Deemphasizing use of SWAT and other tactical units during potentially high

24              risk tactical searches including, but not limited to building searches,

25              probation searches and parole searches;

26          b.    Failing to use SWAT for conducting potentially high risk tactical searches

27              including, but not limited to building searches, probation searches, parole

28              searches;

c. Failing to use SWAT for the preparation, planning, organization and briefing of potentially high risk tactical searches including, but not limited to building searches, probation searches, parole searches;

d. Failing to implement policies, practices and procedures for selecting officers to conduct potentially high risk assignments that are properly trained and prepared for those potentially high risk situations;

e. Failing to implement policies, practices and procedures for supervising and monitoring officers involved in conducting potentially high risk assignments to confirm that they are properly trained, qualified, experienced and prepared for those potentially high risk situations;

f. Assigning unqualified and/or inadequately trained officers to conduct building searches, probation searches, parole searches, which are potentially high risk assignments.

45. As a direct and proximate result of each Defendant's acts and/or omissions as set forth above, Plaintiffs sustained the following injuries and damages, past and future, among others:

a. Wrongful death of THOMAS SMITH, JR.;

b. Hospital and medical expenses;

c. Coroner's fees, funeral and burial expenses;

d. Loss of familial relationships, including loss of love, companionship, comfort, affection, consortium, society, services, solace, and moral support;

e. Loss of economic support;

f. Violation of constitutional rights;

g. All damages and penalties recoverable under 42 USC §§ 1983 and 1988, and as otherwise allowed under California and United States statutes, codes, and common law;

h. All damages and penalties recoverable under Cal. Code of Civil Procedure §377.20 *et seq*, and as otherwise allowed under California and United States statutes, codes, and common law;

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

1    i.  THOMAS SMITH, JR.'s conscious pain and suffering.

2   46.  Defendant BART is vicariously liable under California Government Code §815.2(a)

3 for any and all wrongful, illegal and unconstitutional acts hereinafter complained of committed by

4 Defendant Michael MAES as he was acting in the course and scope of his official capacity as a

5 Detective for Defendant BART.

6   Wherefore, Plaintiffs KELLIE SMITH, individually; as personal representative of the

7 Estate of THOMAS SMITH, JR., Decedent; and as Guardian Ad Litem for S.S., a minor, pray for

8 judgment against Defendant MICHAEL MAES; and DOES 1-10, as set forth below.

9

10
  **SECOND CAUSE OF ACTION – Violation of Civil Rights (42 U.S.C. §1983) – BART
Custom and Policy - Failure to Ensure Officers Were Properly Trained for Tactical
Situations**

11
  **(Against Defendants BAY AREA RAPID TRANSIT DISTRICT; KENTON RAINEY;
BENSON FAIROW and DOES 1-10)**

12

13   47.  Plaintiffs KELLIE SMITH, individually; as personal representative of the Estate of

14 THOMAS SMITH, JR., Decedent; and as Guardian Ad Litem for S.S., a minor, incorporate by

15 reference paragraphs 1-46 above as though fully set forth herein.

16   48.  At all times mentioned herein, Defendants RAINEY; FAIROW; and DOES 1-10,

17 and each of them, acted as supervisors in connection with the probation search of January 21,

18 2014, which resulted in the unlawful, illegal and unconstitutional killing of decedent THOMAS

19 SMITH, JR. Defendants, and each of them, had the authority to set policies, procedures, customs,

20 and practices at BART PD related to the conduct of searches, including, but not limited to

21 building, probation and parole searches. Defendants, and each of them, had the authority to set

22 policies, procedures, customs and practices at BART PD related to search teams, including but not

23 limited to the supervision, training and selection of members. Defendants, and each of them,

24 actively participated in the supervision of the officers involved in the planning, instruction,

25 direction, deployment regarding building, probation and parole searches.

26   49.  At all times mentioned herein, Defendants RAINEY; FAIROW; and DOES 1-10,

27 and each of them, had a duty to properly instruct, supervise, train, plan, direct, oversee and

28 discipline the BART PD personnel that were involved in the subject probation search.

-12-

50.     Defendants RAINEY; FAIROW; and DOES 1-10, and each of them, were active participants in the probation search. Defendant RAINEY; FAIROW; and DOES 1-10, and each of them, acted, and failed to act, in a manner that was reckless and amounted to a callous or deliberate indifference to the constitutional rights of THOMAS SMITH, JR. The acts and omissions of Defendants, and each of them, proximately caused the death of THOMAS SMITH, JR. and the damages complained of herein.

51.     Defendants RAINEY; FAIROW; and DOES 1-10, and each of them, in their capacity as supervisors with personal involvement in establishing BART PD's policies, procedures, customs and practices, and in directing subordinates and in setting in motion a series of acts, knew, or should have known, that their subordinates were likely to inflict constitutional injury to THOMAS SMITH, JR. or anyone else in the residence. The wrongful acts and omissions by the supervisors include, but are not limited to, the following:

    a.    Failing to implement, institute and require proper policies, practices and procedures concerning the safety of officers preparing for and conducting potentially high risk assignments, including, but not limited to building searches, probation searches, parole searches;

    b.    Failing to implement, institute and require proper policies, practices and procedures concerning how officers are to prepare for and conduct potentially high risk situations for the safety of the officers and others, including, but not limited to building searches, probation searches, parole searches;

    c.    Failing to implement, institute and require proper policies, practices and procedures for ensuring that training was successfully completed for potentially high risk tactical searches including, but not limited to building searches, probation searches, parole searches.

    d.    Failing to implement policies, practices and procedures wherein officers who notify command staff that they do not have adequate training to conduct potentially high risk assignments are provided with additional

-13-

1    training and instruction.

2    e.    Failing to provide adequate instruction and training to BART PD officers,

3          including members of the search team, concerning how officers are to

4          prepare for and conduct potentially high risk situations for the safety of the

5          officers and others, including, but not limited to: familiarizing the search

6          team with the floorplan of the residence, requiring a walk through or

7          rehearsal drill, making sure that the officers understood their assignments,

8          securing proper equipment, establishing a proper stacking order and

9          eliminating confusion between BART PD officers by communicating with

10         each other;

11   f.    Failing to ensure that training was successfully completed for potentially

12         high risk tactical searches including, but not limited to building searches,

13         probation searches, parole searches;

14   g.    Failing to provide adequate ongoing, recurrent and refresher instruction and

15         training to officers concerning how to prepare for and conduct potentially

16         high risk assignments including, but not limited to building searches,

17         probation searches, parole searches;

18   h.    Failing to provide adequate instruction and training to BART PD officers,

19         including members of the search team, regarding the use of deadly force;

20   i.    Failed to provide adequate instruction and training in regards to identifying a

21         real threat, as opposed to a fellow BART PD officer;

22   j.    Failing to provide appropriate safety equipment to its personnel conducing

23         potentially high risk tactical searches including, but not limited to building

24         searches, probation searches, parole searches;

25   k.    Failing to provide adequate instruction and training for officers responsible

26         for conducting probation searches to ensure that they refrain from tunnel

27         vision mentality so that the officers believed that anyone inside the residence

28         would be armed, dangerous and would pose a threat, thereby encouraging

-14-

1    and consenting to the use of excessive and deadly force without identifying

2    any real threat.

3        52.    The unconstitutional actions and/or omissions of Defendants MAES, and DOES

4    1-10, as well as other officers employed by or acting on behalf of Defendant BART were pursuant

5    to certain customs, policies, practices, and/or procedures of the BART PD, stated in the

6    alternative, which were directed, encouraged, allowed, and/or ratified by policy making officers for

7    BART and the BART PD.

8        53.    Defendant BART and DOES 1-10 failed to properly hire, train, instruct, monitor,

9    supervise, and evaluate Defendants RAINEY, FAIROW, MAES, and DOE Defendants, and other

10    BART PD personnel, with deliberate indifference to Plaintiffs' Constitutional rights, which were

11    thereby violated as described above.

12        54.    The unconstitutional actions and/or omissions of Defendants RAINEY, FAIROW,

13    MAES, DOES 1-10, and other BART PD personnel, as described above, were approved, tolerated

14    and/or ratified by policy making officers for the BART PD and Defendant BART. Authorized

15    policy makers within BART and the BART PD have approved of the policies, procedures,

16    customs, and practices noted above in paragraph 51 of this Complaint, and have made a deliberate

17    choice to endorse these policies, procedures, customs, and practices. By doing so, the authorized

18    policy makers within BART and BART PD have shown affirmative agreement with the individual

19    defendant officers' actions, and have ratified the unconstitutional acts of the individual defendant

20    officers, which were a direct and legal result of BART PD's policies, procedures, customs, and

21    practices as stated above.

22        55.    The aforementioned customs, policies, practices, and procedures, the failures to

23    properly and adequately hire, train, retrain, instruct, monitor, supervise, evaluate, investigate, and

24    discipline, as well as the unconstitutional orders, approvals, ratification and toleration of wrongful

25    conduct of Defendant BART and DOES 1-10, were a proximate and legal cause of the

26    deprivations of Plaintiffs' constitutional rights in violation of 42 USC §1983, as more fully set forth

27    in Paragraph 51 above.

28        56.    As a direct and proximate result of the unconstitutional actions, omission, customs,

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

policies, practices and procedures of Defendants BART, MAES, RAINEY, FAIROW and DOES 1-10, as described above, Plaintiffs sustained the following injuries and damages, past and future, among others:

    a.    Wrongful death of THOMAS SMITH, JR.;

    b.    Hospital and medical expenses;

    c.    Coroner's fees, funeral and burial expenses;

    d.    Loss of familial relationships, including loss of love, companionship, comfort, affection, consortium, society, services, solace, and moral support;

    e.    Loss of economic support;

    f.    Violation of constitutional rights;

    g.    All damages and penalties recoverable under 42 USC §§ 1983 and 1988, and as otherwise allowed under California and United States statutes, codes, and common law;

    h.    All damages and penalties recoverable under Cal. Code of Civil Procedure §377.20 *et seq*, and as otherwise allowed under California and United States statutes, codes, and common law;

    i.    THOMAS SMITH, JR.'s conscious pain and suffering.

57.    Defendant BART is vicariously liable under California Government Code §815.2(a) for any and all wrongful, illegal and unconstitutional acts hereinafter complained of committed by Defendant Michael MAES as he was acting in the course and scope of his official capacity as a Detective for Defendant BART.

Wherefore, Plaintiffs KELLIE SMITH, individually; as personal representative of the Estate of THOMAS SMITH, JR., Decedent; and as Guardian Ad Litem for S.S., a minor, pray for judgment against Defendant MICHAEL MAES; and DOES 1-10, as set forth below.

**THIRD CAUSE OF ACTION – Interference With Constitutional Rights**
**California Civil Code 52.1 ("Bane Act")**
**(Against Defendants BAY AREA RAPID TRANSIT DISTRICT; KENTON RAINEY;**
**BENSON FAIROW and DOES 1-10)**

58.    Plaintiffs KELLIE SMITH, individually; as personal representative of the Estate of

THOMAS SMITH, JR., Decedent; and as Guardian Ad Litem for S.S., a minor, incorporate by

reference paragraphs 1-57 above as though fully set forth herein.

59.    Defendants BART; RAINEY; FAIROW; and DOES 1-10, through their actions

and omissions described above, caused Decedent THOMAS SMITH JR. to suffer the violation of

his rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution

and the California Constitution.

60.    Defendants' conduct or omissions violated Decedent's rights under California Civil

Code §52.1 by interfering, or attempting to interfere, by threats, intimidation, or coercion with the

exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of

rights secured by the Constitution or laws of the State of California, including but not limited to,

Decedent's right to substantive due process under the Fourteenth Amendment to the United States

Constitution, and the right to enjoy and defend life and liberty, and pursue and obtain safety,

happiness and privacy, as secured by Article 1, section 1 of the California Constitution.

61.    As a direct and proximate result of the conduct of Defendants described herein,

Decedent was denied his constitutional and legal rights, and suffered damages. Defendants acted

with fraud, oppression, and/or malice, which justifies the imposition of punitive and exemplary

damages. Plaintiffs are further entitled to treble damages, civil penalties, attorneys' fees, and all

other damages allowed by California Civil Code §52.

62.    The acts and/or omissions of defendants BAY AREA RAPID TRANSIT

DISTRICT; RAINEY; FAIROW; MAES; and DOES 1-10, and each of them, as alleged herein

occurred in the course and scope of their employment with BART, and BART is liable for its

employees' acts and/or omissions pursuant to California Government Code §815.2 under the

doctrine of *respondeat superior.*

Wherefore, Plaintiffs KELLIE SMITH, individually; as personal representative of the

Estate of THOMAS SMITH, JR., Decedent; and as Guardian Ad Litem for S.S., a minor, pray for

judgment against Defendants BAY AREA RAPID TRANSIT DISTRICT; KENTON RAINEY;

BENSON FAIROW; and DOES 1-10, as set forth below.

///

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

**FOURTH CAUSE OF ACTION – Violation of Civil Rights (42 U.S.C. §1983) -**
**Unreasonable Seizure; Unlawful Use of Deadly Force**
**(Against Defendant MICHAEL MAES; and DOES 1-10)**

63.      Plaintiffs KELLIE SMITH, individually; as personal representative of the Estate of THOMAS SMITH, JR., Decedent; and as Guardian Ad Litem for S.S., a minor, incorporate by reference paragraphs 1-62 above as though fully set forth herein.

64.      Defendant MAES aimed his firearm at Decedent THOMAS SMITH, JR. without first identifying himself or the person he was aiming at and, without warning or retreat, discharged his firearm without legal justification or excuse, knowing that everything that Defendant MAES saw should have indicated to him that the person in front of him was a fellow BART PD officer.

65.      Defendant MAES intentionally, willfully and recklessly committed a battery on the person of Decedent THOMAS SMITH, JR., deliberately intending to cause severe injury or death to the person of THOMAS SMITH, JR. by shooting him at close range with his firearm.

66.      Defendant MICHAEL MAES' actions and use of deadly force were unreasonable and not justified or lawful under the circumstances for several reasons, including but not limited to the following:

      a.      Detective Sergeant THOMAS SMITH, JR. did not pose a threat of harm, serious bodily injury or death, such that the use of deadly force was justified or lawful under the circumstances;

      b.      Detective Sergeant THOMAS SMITH, JR. was not pointing his gun in Detective MICHAEL MAES' direction and Detective MICHAEL MAES made the decision to shoot almost immediately upon observation of a firearm;

      c.      Defendant MICHAEL MAES did not properly assess his target;

      d.      Defendant MICHAEL MAES failed to provide a warning prior to the use of deadly force;

      e.      Defendant MICHAEL MAES failed to retreat from his position prior to the use of deadly force;

      f.      Defendant MICHAEL MAES had a startled response to the sight of the gun;

-18-

1        g.      Defendant MICHAEL MAES fired only one shot and then stopped firing his

2              weapon, which is indicative of a startled response and contrary to police

3              practices and training;

4        h.      Defendant MICHAEL MAES should have recognized Detective Sergeant

5              THOMAS SMITH, JR. He knew Detective Sergeant Smith and worked with

6              him for years. Detective MAES had his flashlight pointed in the direction of

7              Detective Sergeant Smith so he should have been able to recognize that it was

8              Detective Sergeant Smith (or another officer).

9      67.     Defendant MICHAEL MAES' actions and use of deadly force were contrary to

10 proper tactical and search techniques, practices, rules and training for several reasons, including, but

11 not limited to:

12        a.      Turning on lights in bedrooms to improve visibility;

13        b.      Utilizing his flashlight;

14        c.      Following Detective Sergeant THOMAS SMITH, JR. to the left so that

15              rooms could be cleared in tandems; and

16        d.      Announcing that rooms were cleared and communicating with other

17              officers present in the apartment.

18      68.     In the alternative, Defendant MICHAEL MAES' unreasonable and unjustifiable

19 actions and use of deadly force were a product of Defendant BART's practice, customs, policies

20 and failing to institute and require proper and adequate training, policies, and procedures

21 concerning how officers are to prepare for and conduct potentially high risk situations for the

22 safety of the officers and others.

23      69.     By the actions and omissions described above, Defendants MAES, and DOES 1-10

24 violated 42 USC §1983, depriving Plaintiffs of the following clearly-established and well-settled

25 constitutional rights protected by the Fourth and Fourteenth Amendments to the U.S.

26 Constitution:

27        a.      The right to be free from unreasonable seizures and the unlawful and

28              unreasonable use of deadly force, as secured by the Fourth and Fourteenth

1    Amendments;

2    b.    The right to be free from wrongful government interference with familial

3    relationships, and Plaintiffs' right to companionship, society and support of

4    each other, as secured by the Fourth and Fourteenth Amendments and

5    California Code of Civil Procedure §§377.20 *et seq.* and 377.60 *et seq.*

6    70.    As a direct and proximate result of each Defendant's acts and/or omissions as set

7    forth above, Plaintiffs sustained the following injuries and damages, past and future, among others:

8    a.    Wrongful death of THOMAS SMITH, JR.;

9    b.    Hospital and medical expenses;

10   c.    Coroner's fees, funeral and burial expenses;

11   d.    Loss of familial relationships, including loss of love, companionship, comfort,

12   affection, consortium, society, services, solace, and moral support;

13   e.    Loss of economic support;

14   f.    Violation of constitutional rights;

15   g.    All damages and penalties recoverable under 42 USC §§ 1983 and 1988, and

16   as otherwise allowed under California and United States statutes, codes, and

17   common law;

18   h.    All damages and penalties recoverable under Cal. Code of Civil Procedure

19   §377.20 *et seq*, and as otherwise allowed under California and United States

20   statutes, codes, and common law;

21   i.    THOMAS SMITH, JR.'s conscious pain and suffering.

22   71.    Defendant BART is vicariously liable under California Government Code §815.2(a)

23   for any and all wrongful, illegal and unconstitutional acts hereinafter complained of committed by

24   Defendant MICHAEL MAES as he was acting in the course and scope of his official capacity as a

25   Detective for Defendant BART.

26   Wherefore, Plaintiffs KELLIE SMITH, individually; as personal representative of the

27   Estate of THOMAS SMITH, JR., Decedent; and as Guardian Ad Litem for S.S., a minor, pray for

28   judgment against Defendant MICHAEL MAES; and DOES 1-10, as set forth below.

-20-

**FIFTH CAUSE OF ACTION – Wrongful Death (Cal. Code of Civil Procedure §377 *et seq.*)**
**(Against Defendants BAY AREA RAPID TRANSIT DISTRICT; KENTON**
**RAINEY; BENSON FAIROW and DOES 1-10)**

72.   Plaintiffs KELLIE SMITH, individually; as personal representative of the Estate of THOMAS SMITH, JR., Decedent; and as Guardian Ad Litem for S.S., a minor, incorporate by reference paragraphs 1-71 above as though fully set forth herein.

73.   Pursuant to California Code of Civil Procedure Sections 377.60 and 377.61, Plaintiffs have brought this action, and claim damages from Defendants, for the wrongful death of Decedent THOMAS SMITH, JR.

74.   Prior to January 21, 2014 Defendants BART; RAINEY; FAIROW; and DOES 1-10 knew or should have known that officers involved in potentially high risk assignments required proper, adequate and routine training to be readily prepared to safely engage in said assignments to diminish the potential threat to officer safety. Defendants BART; RAINEY; FAIROW; and DOES 1-10, and each of them, were aware of, or should have been aware of, the dangers associated with potentially high risk assignments and the need for proper, adequate and routine training of those officers assigned to conduct these duties, and failed to implement policies and procedures requiring such training.

75.   At all times, Defendants BART; RAINEY; FAIROW; and DOES 1-10 owed Decedent THOMAS SMITH JR. a duty to act with due care to avoid unnecessary or unjustified harm and to refrain from causing or increasing the risk of known dangers presented by potentially high risk assignments.

76.   Defendant MICHAEL MAES recklessly and carelessly searched the residence of John Henry Lee, thereby placing Decedent THOMAS SMITH, JR. in harm's way in the line of fire, causing his injuries and death.

77.   Defendants BART; RAINEY; FAIROW; and DOES 1-10 recklessly and carelessly failed to properly and adequately hire, train, instruct, supervise and implement policies and procedures, so as not to cause harm to Decedent THOMAS SMITH, JR. and to prevent the violation of his legal rights. Defendants breached this duty through the hiring, failure to train, and failure to supervise BART PD personnel responsible for causing or increasing the risk of harm to

1   Decedent THOMAS SMITH, JR.

2       78.    The shooting and ensuing injuries described herein were foreseeable and were the

3   legal and proximate result of Defendants' negligence in failing to exercise reasonable care to

4   prevent injuries and death to those involved.

5       79.    As a direct and proximate result of the unconstitutional actions, omission, customs,

6   policies, practices and procedures of Defendants BART, RAINEY, FAIROW, MAES, and DOES

7   1-10, as described above, Plaintiffs have sustained pecuniary loss resulting from the loss of

8   comfort, society, attention, services, and support of Decedent THOMAS SMITH, JR., as well as

9   funeral and burial expenses, all in an amount according to proof at trial, pursuant to California

10  Code of Civil Procedure §377 *et seq.*

11      80.    The acts and/or omissions of BAY AREA RAPID TRANSIT DISTRICT;

12  RAINEY; FAIROW; MAES;  and DOES 1-10, and each of them, as alleged herein occurred in the

13  course and scope of their employment with BART, and BART is liable for its employees' acts

14  and/or omissions pursuant to California Government Code §815.2 under the doctrine of *respondeat*

15  *superior.*

16      Wherefore, Plaintiffs KELLIE SMITH, individually; as personal representative of the

17  Estate of THOMAS SMITH, JR., Decedent; and as Guardian Ad Litem for S.S., a minor, pray for

18  judgment against Defendants BAY AREA RAPID TRANSIT DISTRICT; KENTON RAINEY;

19  BENSON FAIROW; and DOES 1-10, as set forth below.

20
    **ALLEGATIONS JUSTIFYING REQUEST FOR AWARD OF EXEMPLARY DAMAGES
21  BASED ON MALICE AND OPPRESSION (Cal. Civil Code §3294)
    (Against Defendants KENTON RAINEY; BENSON FAIROW and DOES 1-10)**
22

23      81.    Plaintiffs KELLIE SMITH, individually; as personal representative of the Estate of

24  THOMAS SMITH, JR., Decedent; and as Guardian Ad Litem for S.S., a minor, incorporate by

25  reference paragraphs 1-80 above as though fully set forth herein.

26      82.    Beginning on or about January 21, 2014 and continuously thereafter, Defendants,

27  KENTON RAINEY; BENSON FAIROW and DOES 1-10, and each of them, were aware of, or

28  should have been aware of, the dangers associated with potentially high risk assignments and the

-22-

1   need for proper, adequate and routine training of those officers assigned to conduct these duties.

2   These dangers included but are not limited to risks associated with the use and discharge of

3   firearms and deadly weapons, and the risk of serious injury and/or death to officers and members

4   of the public.

5        83.    From on or about January 21, 2014 and continuously thereafter, Defendants,

6   RAINEY; FAIROW and DOES 1-10, and each of them, failed to properly and adequately hire,

7   train, retrain, instruct, monitor, supervise, evaluate, investigate, and discipline their employees, who

8   were officers of BART PD, in handling potentially high risk assignments.

9        84.    Defendants RAINEY; FAIROW and DOES 1-10, and each of them, knew that

10   officers who were untrained, or improperly trained, regarding high risk situations should not be

11   sent on potentially high risk assignments because of the likelihood of errors in the operation of

12   firearms and deadly weapons, and the likelihood that the officers would cause serious bodily injury

13   and/or death to one another or to members of the public. Despite Defendants' knowledge of the

14   likelihood of serious bodily injury and/or death, defendants and each of them assigned, directed,

15   instructed, demanded, enforced, and created policies, procedures and customs causing certain

16   officers who were untrained or improperly trained regarding potentially high risk situations to be

17   sent on potentially high risk assignments.

18        85.    In failing to properly and adequately hire, train, retrain, instruct, monitor, supervise,

19   evaluate, investigate, and discipline their employees in handling potentially high risk assignments,

20   Defendants RAINEY; FAIROW and DOES 1-10, and each of them, acted with malice and

21   oppression toward Decedent THOMAS SMITH JR. Defendants knew or should have known, that

22   without the proper training, instructions, monitoring and supervision that the potentially high risk

23   assignments would pose a serious risk of bodily injury or death to Decedent THOMAS SMITH,

24   JR.. In failing to properly and adequately hire, train, retrain, instruct, monitor, supervise, evaluate,

25   investigate, and discipline their employees in handling potentially high risk assignments,

26   Defendants, and each of them, carelessly, recklessly, knowingly and willfully disregarded

27   Decedent's health and safety, and acted despicably in disregard of Decedent's rights, so as to justify

28   an award of exemplary and punitive damages.

86.     In failing to properly and adequately hire, train, retrain, instruct, monitor, supervise, evaluate, investigate and discipline their employees in handling potentially high risk assignments, Defendants RAINEY; FAIROW and DOES 1-10, and each of them, acted with oppression and malice. Defendants, and each of them, intentionally failed to properly and adequately hire, train, retrain, instruct, monitor, supervise, evaluate, investigate, and discipline their employees in handling potentially high risk assignments. In so doing, Defendants, and each of them, intended to thereby deprive Decedent of his rights. Further, Defendants' failure to properly and adequately hire, train, retrain, instruct, monitor, supervise, evaluate, investigate, and discipline their employees in handling potentially high risk assignments was despicable conduct that subjected Decedent to a cruel and unjust hardship in conscious disregard of Decedent's rights, so as to justify an award of exemplary and punitive damages.

87.     On or about January 21, 2014, Defendants RAINEY; FAIROW and DOES 1-10, and each of them, as the managers, supervisors, and/or commanding officers of Decedent THOMAS SMITH, JR., had control over the employment and assigned duties of Decedent. Defendants, and each of them, knowingly failed to properly and adequately hire, train, retrain, instruct, monitor, supervise, evaluate, investigate, and discipline their employees in handling potentially high risk assignments, and knowingly permitted Defendant MICHAEL MAES and Decedent to perform the work which they were not properly or adequately trained to do. On or about January 21, 2014, the employment of Decedent and MAES by Defendants did in fact cause bodily injury to Decedent which resulted in his death.

88.     By knowingly directing, instructing, authorizing, and/or permitting Defendant MICHAEL MAES and Decedent THOMAS SMITH, JR. to perform work which they were not adequately and properly trained to do, Defendants RAINEY; FAIROW and DOES 1-10, and each of them, acted with malice and oppression toward Decedent. Defendants, and each of them, knew or should have known, that performing potentially high risk assignments without adequate and proper training, policies, and procedures would pose a serious risk of bodily injury to Decedent. In failing to provide adequate and proper training, policies, and procedures Defendants, and each of them, acted carelessly and recklessly, knowingly and willfully disregarded Decedent's health and

1    safety, and acted despicably in disregard of Decedent's rights, so as to justify an award of exemplary

2    and punitive damages.

3          89.      On or about January 21, 2014, Defendants RAINEY; FAIROW and DOES 1-10,

4    and each of them, acted in a reckless manner with the natural consequences being dangerous to life,

5    and did so with conscious disregard of those consequences when they required department

6    personnel to perform potentially high risk assignments without adequate and proper training,

7    policies and procedures.

8          90.      Because of the despicable conduct of Defendants BAY AREA RAPID TRANSIT

9    DISTRICT; RAINEY; FAIROW and DOES 1-10, and each of them, as aforesaid, constituting

10   malice, oppression, and fraud under Civil Code section 3294, an award of exemplary damages is

11   justified against Defendants and each of them.

12                                         **PRAYER**

13          WHEREFORE, with respect to each cause of action listed above, Plaintiffs KELLIE

14   SMITH, individually; as personal representative of the Estate of THOMAS SMITH, JR., Decedent;

15   and as Guardian Ad Litem for S.S., a minor, pray for damages against Defendants BAY AREA

16   RAPID TRANSIT DISTRICT; KENTON RAINEY; BENSON FAIROW; MICHAEL MAES;

17   and DOES 1-10, and each of them as follows:

18          1.      Compensatory and general damages in an amount according to proof;

19          2.      Exemplary and punitive damages under 42 USC §1983 and California law in an

20                  amount according to proof;

21          3.      Statutory damages, treble damages, and penalties pursuant to California Civil Code

22                  § 52(b);

23          4.      Injunctive relief enjoining, pursuant to California Civil Code § 52.1, Defendant

24                  BART from authorizing, allowing, or ratifying its practice of forcing employees to

25                  perform tactical operations without having the requisite training when there is a

26                  known and significant risk of harm, serious bodily injury and death to officers and

27                  the public. Such relief would include implementation of policies allowing for

28                  officers to request and obtain training when needed;

5.   Plaintiffs' costs, expenses, and reasonable attorneys' fees pursuant to 42 USC §
     1988; California Civil Code § 51.7, 52, and 52.1; and California Code of Civil
     Procedure § 1021.5;

6.   All other damages, penalties, costs, interest, and attorney fees as allowed by 42 USC
     §§1983 and 1988, Cal. Code of Civ. Proc. §§377.20 *et seq.* and 377.60 *et seq.* and as
     otherwise may be allowed by California and/or federal law;

7.   Pre- and post-judgment interest as permitted by law; and

8.   Such other and further relief as this Court may deem appropriate.

Dated: May 29, 2015                              Respectfully submitted,
                                                 RAINS LUCIA STERN, PC


                                                 By:  Joseph R. Lucia
                                                 Attorney for Plaintiffs KELLIE SMITH,
                                                 individually; as personal representative of the
                                                 Estate of THOMAS SMITH, JR., Decedent;
                                                 and as Guardian Ad Litem for S.S., a minor


## DEMAND FOR JURY TRIAL

As to the matters complained of herein against Defendants BAY AREA RAPID TRANSIT
DISTRICT; KENTON RAINEY; BENSON FAIROW; MICHAEL MAES; and DOES 1-10, and
each of them, Plaintiffs KELLIE SMITH and SUMER SMITH, a minor, demand a trial by jury.

Dated: May 29, 2015                              Respectfully submitted,
                                                 RAINS LUCIA STERN, PC


                                                 By:  Joseph R. Lucia
                                                 Attorney for Plaintiffs KELLIE SMITH,
                                                 individually; as personal representative of the
                                                 Estate of THOMAS SMITH, JR., Decedent;
                                                 and as Guardian Ad Litem for S.S., a minor

**EXHIBIT A**

1  EUSTACE DE SAINT PHALLE, SBN 179100
   JOSEPH R. LUCIA, SBN 278318
2  RAINS LUCIA STERN, PC
   220 Montgomery Street, 15th Floor
3  San Francisco, CA 94104
   Tel: (925) 609-1699
4  Fax: (925) 609-1690
   E-mail: Personalinjurygroup@RLSlawyers.com
5
   Attorneys For Plaintiffs
6  KELLIE SMITH, individually; as personal
   representative of the Estate of THOMAS
7  SMITH, JR., Decedent; and as Guardian Ad
   Litem for S.S., a minor
8
9              UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11  KELLIE SMITH, individually; KELLIE SMITH,        CASE NO.
    as personal representative of the Estate of
12  THOMAS SMITH, JR., Decedent; and KELLIE          **DECLARATION OF KELLIE SMITH AS**
    SMITH, as Guardian Ad Litem for S.S., a minor;   **SUCCESSOR IN INTEREST OF**
13                                                   **THOMAS SMITH, JR.**
              Plaintiffs,
14
15       v.
16  BAY AREA RAPID TRANSIT DISTRICT;
    KENTON RAINEY, individually and in his
17  official capacity as CHIEF OF POLICE for BAY
    AREA RAPID TRANSIT DISTRICT; BENSON
18  FAIROW individually and in his official capacity
    as DEPUTY CHIEF OF POLICE for BAY
19  AREA RAPID TRANSIT DISTRICT;
    MICHAEL MAES individually and in his official
20  capacity as DETECTIVE for BAY AREA RAPID
    TRANSIT DISTRICT; and DOES 1 through 10,
21  inclusive,

22            Defendants.

23       I, Kellie Smith, declare as follows:

24       1.      The decedent's name is Thomas Smith, Jr.

25       2.      The decedent, Thomas Smith, Jr., passed away on January 21, 2014 in Castro Valley,

26  California after suffering a gunshot wound in Dublin, California.

27       3.      No proceeding is now pending in California for administration of the decedent's

28  estate.

-1-

DECLARATION OF KELLIE SMITH AS SUCCESSOR IN INTEREST OF THOMAS SMITH, JR.

1       4.     I am the decedent, Thomas Smith, Jr.'s, successor in interest (as defined in Section

2  377.11 of the California Code of Civil Procedure) and I succeed to the decedent's interest in the

3  action or proceeding.

4       5.     No other person has a superior right to commence the action or proceeding or to

5  be substituted for the decedent in the pending action or proceeding.

7       I, Kellie Smith, declare under penalty of perjury under the laws of the State of California

8  that the foregoing is true and correct.

10  Dated: May 29, 2015

           By:  Kellie Smith

DECLARATION OF KELLIE SMITH AS SUCCESSOR IN INTEREST OF THOMAS SMITH, JR.