# RLS RAINS LUCIA STERN, PC

August 11, 2016

Hon. Elizabeth D. Laporte, United States Magistrate Judge
United States District Court (Northern District of CA)
San Francisco Courthouse, Courtroom E – 15th Floor

    **Re:**    *Kellie Smith v. Bay Area Rapid Transit District, et al.*
              USDC Case No. 3:15-cv-02402 TEH

Dear Judge Laporte:

The parties are writing to jointly submit the following discovery dispute to your attention for resolution in accordance with your rules. Defendant BART has produced over 8,400 pages of documents in response to Plaintiff's production requests that are heavily redacted, some of which have the entire page redacted. Defendants claim the information and identities are protected because it is not relevant to this case and/or it infringes on the privacy rights of officers who are not parties and were not present for the incident. Although there has been extensive meet and confer, the defendants have refused produce the documents absent the redactions.

## Plaintiff's Position

Defendant has produced over 7000 pages of documents in response to Plaintiff's production requests. These requested documents were within the broad scope of discovery permitted under F.R.C.P. 26. Redaction is not authorized under the law. A large portion of the documents produced are heavily redacted, some of which have the entire page redacted. These redactions are contained in emails, training orders, attendance rosters, notes, bulletins, memorandums and the like. There are literally hundreds, if not thousands of pages with redactions and it is almost impossible for Plaintiff to identify every single redaction. Defendants claim the information and identities are protected because it is not relevant to this case and/or it infringes on people's privacy rights.

An example of the redactions by Defendant includes the name of an officer who attended a warrants/high risk operations training class. The redacted information is highly relevant to Plaintiffs' case because this is the very class decedent Smith was requesting that he and his entire Detective Unit be able to attend so they could safely perform their jobs and functions as unit. Decedent was never able to attend and was still required to conduct potentially high risk building searches. The identity of other officers and detectives who attended the type of training that should have been provided to the Detective Unit is highly relevant.

These redactions are hiding the context of when these statements and orders were made and necessarily hiding the identity of witnesses and statements of witnesses which go directly to Plaintiffs' claims: individual claims against Defendant Maes for unlawful and excessive force, individual claims against Defendants Fairow and Rainey for denying requested training needed to safely perform building searches, and potentially would demonstrate that command staff and other personnel were following the instructions of Defendants Rainey and Fairow who were knowingly sending officers to perform tasks that would potentially require the use of deadly force in situations where it was known that the officers were not trained to safely perform such tasks. Defendant appears to be hiding the identity of witnesses and information that is pertinent and beneficial to Plaintiffs' claims.

Defendant has only withheld and redacted information that it uniformly deemed "non-responsive." It appears that these redactions, and others, may contain information regarding the following issues: (1) the shooting death of Detective Sergeant Smith; (2) training deficiencies and probation searches; (3) training records and correspondence concerning the need for detectives to be provided probation/building search training; (4) APTA review and an assessment of the SWAT and tactical teams; (5) SWAT training and written exams taken by officers; and (6) email correspondence related to the instant lawsuit. All of these issues are highly relevant to Plaintiffs' claims in this case. As discussed above, these matters will provide the foundational facts that support an individual excessive force claim against Maes and a *Monell* claim against BART as it relates to a custom, practice or policy that it knew would put officers and the public at risk, when deadly force would potentially be used during a potentially high risk procedure.

It is hard to imagine how other officers' identities are also not relevant to this action and/or protected under a claim of privacy when they were included in some of the following circumstances: (1) Training requests, training orders and classes that deal specifically with building searches; (2) Email correspondence about the need for building search training for the Detective Unit. These witnesses are material to this case and it appears that Defendant is attempting to prohibit Plaintiff from obtaining the identity of witnesses that will provide testimony beneficial to Plaintiffs' case. These are public employees who are identified in public documents. If a public records request was issued for emails amongst individuals within a public agency, those documents and emails would not be redacted. Establishing the identity of these persons would likely allow Plaintiffs to obtain testimony that demonstrates a pattern of BART management violating its own policies, customs and procedures. In addition, the information deleted will establish dates, witnesses and potential events, other than the subject event, that support not just one violation, but multiple violations by the Department's command staff.

To the extent Defendant relies on State law preventing the production of the requested information, that objection is meritless. "In civil rights cases brought under Federal statutes, questions of privilege are resolved by Federal law. State privilege doctrine, whether derived from statutes or court decisions, is not binding on federal courts in these kinds of cases." (*Hampton*, 147 F.R.D. 227, 230 (S.D. Cal. 1993))  "Federal claims heard in Federal Court are governed by the privileges defined by the Federal common law." (F.R.E. 501; *Kerr v. United States District Court*, 511 F.2d 192, 197 (9th Cir. 1975)) Here, the state law protections applicable to peace officer personnel files do not apply in federal cases.

That issue aside, even if there are some privacy issues, which there are not, the parties have already entered into a duly-executed and appropriately-worded Protective Order. All documents that are deemed "confidential" are subject to confidentiality provisions of that Order. The existence and purpose of the Protective Order is to resolve any and all privacy concerns, including the qualified privilege issues, if there are any. "Finally, it is important to emphasize that in many situations what would pose the threat to law enforcement interests is disclosure to the public generally, not simply to an individual litigant and/or her lawyer. Thus, the weight of some of the interests in the law enforcement category may be reduced because courts routinely enter tightly crafted protective orders under which only a single litigant, sometimes only that litigant's lawyer, has access to the sensitive information. (*Kelly v. City of San Jose*, 114 F.R.D. 653, 662 (N.D. Cal. 1987)) Said Order provides the party assurances that documents and information contained therein is protected from unintended disclosure to the general public. "Absent a special showing in a particular case, these kinds of measures usually will offer sufficient protection to the governmental interest." (*Kelly v. City of San Jose*, 114 F.R.D. 653, 666 (N.D. Cal. 1987))

There is no legitimate basis for these redactions and such conduct by the Defendant appears to be done as an abuse of the discovery process and preclude Plaintiffs from obtaining evidence.

### Defendant's Position

Plaintiffs' assertion that Defendants "produced over 7,000 pages … that are heavily redacted" is flatly untrue, as is Plaintiffs' statement that Defendants "only withheld and redacted information that [they] uniformly deemed 'non-responsive.'" Very few of the documents Defendants have produced in this case were redacted. Declaration of Barry Hassenberg ("Hassenberg Dec."), Ex. 1. Plaintiffs' position is replete with generalities that fail to recognize the unique nature of each document and the fact different documents were redacted for different reasons. Plaintiffs do not specify which documents are at issue, thereby limiting Defendants' ability to respond (especially in the confines of a five-page letter brief). It should be noted that during the meet-and-confer process Plaintiff did identify certain documents as to which counsel believed redactions were not warranted, and Defendants explained specifically why each identified item was redacted. Hassenberg Dec., Ex. 2. Plaintiffs do not identify which documents they seek herein, and they simply suggest all documents should be unredacted. Contrary to Plaintiffs' position, courts recognize several reasons why documents may be redacted, such as to protect privacy rights of non-parties. *United States v. Bus. of the Custer Battlefield Museum*, 658 F.3d 1188, 1195 n.5 (9th Cir. 2011); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1137 (9th Cir. 2003) [records "can be redacted easily to protect third-party privacy interests while leaving other meaningful information"].

Plaintiffs incorrectly state a public records request would yield unredacted documents, but in fact the Freedom of Information Act ("FOIA") contains several exceptions that would apply here. FOIA Exemption 6 exempts disclosure of "personnel and medical files and similar files … which would constitute a clearly unwarranted invasion of personal privacy," and Exemption 7 creates a broad exemption for "records or information compiled for law enforcement purposes…." 5 U.S.C. § 552(b). "A broad range of personal privacy interests are cognizable under FOIA, including under Exemption 6. The Court has emphatically rejected a 'cramped notion of personal

privacy.' Individuals not only have an obvious privacy interest in being free from retaliation, harassment, embarrassment, or stigma. They also have a privacy interest in simply 'keeping personal facts away from the public eye.' '[P]rivacy encompass[es] the individual's control of information concerning his or her person.'" *Prudential Locations LLC v. United States HUD*, 739 F.3d 424, 430-31 (9th Cir. 2013) [quoting *U.S. Dept. of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 109 S. Ct. 1468 (1989)].

Federal courts also reject the notion that state-law privileges are not recognized in federal cases. Where state protections do not contradict federal jurisprudence, "[s]tate law may provide a useful referent…." *Breed v. United States Dist. Court*, 542 F.2d 1114, 1115 (9th Cir. 1976). "Although federal courts are not required to apply state privileges law to federal question cases, federal courts may do so in the interest of comity…. In determining whether to apply a state privilege, a federal court should first analyze whether application of the state law would be inconsistent with federal law. If the state law is not inconsistent, the federal court should attempt to apply the state privilege in harmony with federal privileges law." *Burrows v. Redbud Cmty. Hosp. Dist.*, 187 F.R.D. 606, 608-09 (N.D. Cal. 1998). "None of this means, however, that federal courts should wholly ignore state laws, or rights recognized by state governments, when analyzing privilege issues in civil rights cases. As a matter of comity, federal courts should attempt to ascertain what interests inspire relevant state doctrine and should take into account the views of state authorities about the importance of those interests. When it is clear that a desire to ward off civil rights plaintiffs played no role in the formulation of state privilege rules it would be irrational for a federal court to assume that it could learn nothing from state or local views about the severity of the problems that could be created if certain kinds of information were available to civil litigants. Likewise, federal courts generally should give some weight to privacy rights that are protected by state constitutions or state statutes." *Kelly v. San Jose*, 114 F.R.D. 653, 656 (N.D. Cal. 1987).

Defendant's redactions are based on both federal and state privileges and rationale, and it is clear that both are applicable and must be considered since they do not conflict. Thus the state law privileges cited in the privilege log are entitled to the same weight as the federal grounds.

## Plaintiff's Proposed Compromise

The parties have already entered into a duly-executed and appropriately-worded Protective Order. Said Order resolves any and all privacy concerns, including the qualified privilege.

## Defendant's Proposed Compromise

Defendant has been more than cooperative in disclosing documents to plaintiff, as evidenced by plaintiff's assertion that defendant has produced over 7000 documents in this litigation. (In truth Defendant has produced over 8,400 pages.) Plaintiff's vague and broad request, that all redacted documents should be produced without redactions, must be denied outright because it lacks specificity and because a blanket request for all documents to be unredacted ignores the reality that each document must be examined individually to determine the redactions are appropriate. Defendant suggests the only documents which should be considered for purposes of this motion are the ones Plaintiff identified in her July 6, 2016 letter, as plaintiff has not properly met and conferred as to any other documents.

Due to the nature of the redacted information, defendant respectfully requests an *in camera* review of the documents identified in the July 6 correspondence. The redacted information in these documents relate to officer safety, privacy of non-parties, or personal information that is unrelated to any of plaintiff's claims.  Defendant will produce these documents to the Court upon request.

| | |
|---|---|
| **RAINS LUCIA STERN, PC** | **LEWIS BRISBOIS BISGAARD & SMITH, LLP** |
| /s/ *Joseph R. Lucia*<br>Joseph R. Lucia<br>Attorneys for Plaintiffs | /s/ *Dana A. Fox*<br>Dana A. Fox<br>Attorneys for Defendants |

## DECLARATION OF BARRY HASSENBERG

I, Barry Hassenberg, declare as follows:

1. I am an attorney duly admitted to practice in all of the courts of the State of California and I am a partner with Lewis Brisbois Bisgaard & Smith LLP, attorneys of record for Defendants herein. The facts set forth herein are of my own personal knowledge, and if sworn I could and would competently testify thereto.

2. Attached as Exhibit 1is a true, correct and complete copy of the privilege log I sent to Plaintiff's counsel Joseph Lucia on June 6, 2016.

3. Attached as Exhibit 2 is a true, correct and complete copy of a letter I caused to be sent to Mr. Lucia on July 18, 2016.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on August 15, 2016, at Los Angeles, California.

/s/
Barry Hassenberg