# RLS RAINS LUCIA STERN, PC

August 15, 2016

Hon. Elizabeth D. Laporte, United States Magistrate Judge
United States District Court (Northern District of CA)
San Francisco Courthouse, Courtroom E – 15th Floor

    Re:    *Kellie Smith v. Bay Area Rapid Transit District, et al.*
            USDC Case No. 3:15-cv-02402 TEH

Dear Judge Laporte:

The parties are writing to jointly submit the following discovery dispute to your attention for resolution in accordance with your rules.  Plaintiff Kellie Smith requested investigative reports of the shooting death incident of Detective Sergeant Smith. There are two separate investigative reports in the possession of Defendants. One by BART PD and the other by an outside investigator, Richard Webb. Both investigations include reports, documents and recordings, Defendant has asserted a blanket refusal to produce any document related to the internal investigations on the grounds of the "official information privilege," state law privileges and a claim that the documents themselves are inadmissible. They have also restricted deposition testimony and instructed witnesses not to answer questions. Although there has been extensive meet and confer, the defendants have refused to allow any discovery on these reports.

## Plaintiff's Position

**The Materials Sought are Relevant and Material to Plaintiffs' Case:** The requested discovery is necessary for Plaintiffs to meet their burden at trial on its §1983 civil rights claims, both individual claims and their claims against BART, "policy" or "custom" has directly caused the deprivation of the federal rights. BART is directly liable for policies and customs made with indifference to Plaintiffs' rights. Plaintiffs allege that BART created a policy to assign improperly trained officers to perform building probation searches. BART knew that its officers would be endangered if they were sent into dangerous situations without proper training because BART previously had a policy of providing training or SWAT supervision, and defendants were told by officers that they weren't trained for these tactical assignments. Despite this knowledge, BART sent them on tactical assignments anyway. These facts show a deliberate indifference to Plaintiffs' civil rights and decedent's physical safety. This resulted in Detective Maes, an improperly trained officer, to use excessive force against Smith, particularly, discharging his weapon at a fellow officer without retreat, warning, or reasonable belief of immediate threat.

The Federal standard of relevance is liberal and, under F.R.E. 401, any evidence that "has any tendency to make a fact a fact more or less probable…and…consequence in determining the action…" is relevant. In this case, the internal investigation likely contains documents, reports,

220 Montgomery Street | 15th Floor | San Francisco, CA | 94104 | T 415.341.9341 | F 925.609.1690
Fresno | Ontario | Pleasant Hill | Sacramento | San Francisco | San Jose | Santa Rosa
www.RLSlawyers.com

253

recordings, diagrams, memorandums and policies that deal specifically with the facts of how this incident occurred. These investigations were done solely due to the facts, circumstances and events of the shooting death incident, including deficiencies in training, failure to follow policies and failure to have proper practices in place to avoid this from happening. The materials contain facts, identities of witnesses and documents that are directly relevant to the causes of action in this case. These materials will result in the discovery and identification of witnesses, facts and documents, including reports, transcripts, recordings, policies, memorandums and records.

The requested materials contain independent statements and facts that will likely establish that BART had a practice, custom or policy of placing its officers and the public at risk by assigning improperly trained officers to perform building and probation searches. The information may demonstrate that BART had knowledge its officers would be endangered if they were sent into dangerous situations without proper training. If established, these facts could contradict sworn testimony that has already been provided by Defendants in depositions and at the time of trial. Such witnesses statements generated as a result of these investigations not only provide factual relevance to how the incident occurred, and other potential material facts, but also will provide for potential impeachment testimony of witnesses and persons that are likely to testify at trial.

Defendant claims that the documents will not be produced because they are inadmissible at trial. The authority Defendant relies on applies to *admissibility* at trial, and not *discoverability*. This is an improper analysis during discovery. Notwithstanding that distinction, although Defendants may argue that these are subsequent remedial measures and therefore not admissible, it does not mean that the evidence may be admissible for some other purpose. While it can be argued that it may not be admissible for one thing, like proving negligence, it does mean to preclude the evidence for being used in another instance, like to establish knowledge on behalf of the Defendants and that it was implementing a practice, policy and custom that did not reflect best police practices and was contrary to what other police agencies follow. These records may establish issues of notice, feasibility, and violation of best practices. Defendant is fully aware of the distinction and there is no legitimate basis for refusal to produce the documents other than to abuse the discovery process and conceal information in this case.

**Defendant Failed to Follow Proper Procedures:** BART has failed to follow the procedures set forth in *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987) and *Miller v. Pancucci*, 141 F.R.D. 292 (C.D. Cal. 1992) for invoking the official information privilege. A party invoking this privilege must submit, at the time it files and serves its response to the discovery request, a declaration or affidavit, under oath or subject to the penalty of perjury, from the head of the department which has control over the matter identifying the alleged harm. No such declaration has been submitted in this case and thus Defendant has failed to meet its burden.

**BART is Abusing the Official Information Privilege:** Defendant can't rely on State law to prevent production. "In civil rights cases brought under Federal statutes, questions of privilege are resolved by Federal law. State privilege doctrine, whether derived from statutes or court decisions, is not binding on federal courts in these kinds of cases." (*Hampton v. City of San Diego*, 147 FRD 227, 228-29 (S.D. Cal. 1993)) "Federal claims heard in Federal Court are governed by the privileges defined by the Federal common law." (F.R.E. 501; *Kerr v. United States District Court*, 511 F.2d 192, 197 (9th Cir. 1975))

Defendant improperly attempts to rely on the "official information privilege," which "potentially extremely broad" and subject to abuse. (*Kelly, supra,* at 669) "A general claim of harm to the public interest would not be sufficient to overcome the burden placed on the party seeking to shield material from disclosure." (*Kelly, supra* at 672) BART is abusing the privilege and refusing to produce documents that have routinely been produced in civil rights cases and the courts have established that such documents are discoverable. For example, in *Hampton, supra,* 228-29 (S.D. Cal. 1993), the Court ordered production of personnel records and IA records from past cases. Here, Plaintiff is requesting the investigation of the very incident that acts as the basis of the suit, which is a narrower request than other cases like *Hampton*.

Defendant claims there must be a balancing test. Defendant fails to recognize that the cases it cites, all favor disclosure of the requested documents. The balancing test itself is one that "is moderately pre-weighted in favor of disclosure. Such pre-weighting is consistent with the well-established notion that because privileges operate in derogation of the truth finding process the law places the burden of proving all the elements essential to invoking any privilege on the party seeking its benefits. The pre-weighting also is consistent with the related idea that privileges generally are to be narrowly construed, and that doubts about their applicability are to be resolved in favor of disclosure." *Kelly v. City of San Jose*, 114 F.R.D. 653, 662 (N.D. Cal. 1987)

In *Kelly*, the court considered a similar request to the one here and concluded that **"such material should be presumptively discoverable when a plaintiff makes a proper showing of relevance."** (*Kelly, supra,* at 666) As described above, these files are highly relevant and material. This investigation is no longer pending and the reports are completed, which weighs heavily in favor of disclosure. There is no chilling effect to any governmental process by producing these materials. Courts have ruled out any arguments that in doing so it would somehow discourage further complaints, cause officers to be less forthright during interviews, affect the integrity of law enforcement or quality of policing. (See *Kelly, supra,* 664.) Plaintiffs have no other means to obtain this information and are being severely prejudiced as they prepare for trial with discovery now closed.

**A Protective Order is in Place:** The parties have already entered into a duly-executed and appropriately-worded Protective Order. All documents that are deemed "confidential" are subject to confidentiality provisions of that Order. The existence and purpose of the Protective Order is to resolve any and all privacy concerns, including the qualified privilege issues, if there are any. "Finally, it is important to emphasize that in many situations what would pose the threat to law enforcement interests is disclosure to the public generally, not simply to an individual litigant and/or her lawyer. Thus the weight of some of the interests in the law enforcement category may be reduced because courts routinely enter tightly crafted protective orders under which only a single litigant, sometimes only that litigant's lawyer, has access to the sensitive information." (*Kelly, supra,* at 662) Said Order provides the party assurances that documents and information contained therein is protected from unintended disclosure to the general public. "Absent a special showing in a particular case, these kinds of measures usually will offer sufficient protection to the governmental interest." (*Kelly, supra,* at 666) Thus, withholding these investigatory documents run afoul of the purpose of the protective order and is entirely improper.

## Defendant's Position

Internal investigations are not admissible because the investigation and report are "remedial measures taken after the incident," and the "prejudicial effect outweigh[s] its probative value." *Maddox v. Los Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1986) [they have "little probative value"]. Such reports are excluded under Federal Rules of Evidence 403 and 407. *Ibid*. Matter that is not itself admissible is discoverable only if it is reasonably calculated to lead to admissible evidence.

The only admissible evidence in BART's report is information already known, including the identity of witnesses; the location of the probation search; the reasons why it was conducted; and the events preceding it. The report also contains, however, subjective notes and conclusions of the investigators, as well as inadmissible remedial measures. These reports are also protected by the official information privilege, which requires a ten-point balancing test to determine if disclosure is proper: "1. The extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; 2. The impact upon persons who have given information of having their identities disclosed; 3. The degree to which government self-evaluation and consequent program improvement will be chilled by disclosure; 4. Whether the information sought is factual data or evaluative summary; 5. Whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; 6. Whether the police investigation has been completed; 7. Whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; 8. Whether the plaintiff's suit is non-frivolous and brought in good faith; 9. Whether the information sought is available through other discovery or from other sources; and 10. The importance of the information sought to the plaintiff's case." *Price v. Cnty. of San Diego*, 165 F.R.D. 614, 621 (S.D. Cal. 1996). Those factors are not met in this case.

1. Individuals will complain about the police without fear of retaliation only if their identities are kept secret. Discovery of internal investigations would discourage citizens from coming forward. 2. Officers who give information about other officers would stop doing so, afraid of jeopardizing their careers, if their cooperation were known. Officers must cooperate with Internal Affairs and can be terminated for failure to cooperate; thus procedural due process may be denied and Fifth Amendment rights may be violated. 3. An effective Internal Affairs bureau is needed to preserve the integrity of law enforcement and provide a self-evaluation program to improve the quality of policing. If Internal Affairs information were not confidential, a "chilling" effect would subvert the department's ability to gather candid information from witnesses and other police officers, as well as obtain critical opinions of police actions from supervisory personnel. 4. The report contains both factual data and evaluative summary, and Plaintiffs are well aware of the factual portions of the investigation. The opinions, conclusions and recommendations in the report are not admissible and not discoverable since law enforcement has legitimate interests in maintaining the confidentiality of such matters. 9. Plaintiffs have failed to show the requested information is unavailable by less burdensome and intrusive means. 10. Plaintiffs are already aware of the factual information in the report, and they have not shown and cannot show the evaluative data and subjective conclusions of the investigators are necessary, important or even relevant to Plaintiffs' case. Plaintiffs know the identities of the eyewitnesses who were present at the incident, and in light of the substantial amount of evidence available to all parties, the BART police department's need for confidentiality outweighs Plaintiffs' claimed need for disclosure.

Government self-evaluation would be chilled if internal investigations are discoverable. Where, as here, law enforcement investigates an accidental shooting, the resulting report will contain both factual data and evaluation thereof. The factual information can be obtained, as it has been in this case, from many other sources, and the subjective conclusions of the investigators are irrelevant. Because much of the information in the BART report generated in this instance is available and has been obtained from other sources, the relevance of the report itself is lessened. Finally, the report is not important to Plaintiffs' case for the reasons set forth above. All of the useful information in the report can be and has been obtained elsewhere, making production of the report of little value. Because production would negatively impact other considerations, however, the *Kelly* factors weigh in favor of protecting the report in this case.

With respect to the declaration in support of defendant's assertion of the official information privilege, defendant produces herewith, the Declaration of Deputy Chief Lance Haight to meet its initial burden of demonstrating the privilege is applicable. *Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995); *see also Kelly*, 114 F.R.D. at 671. Defendant respectfully submits this late declaration and notes plaintiff has not been prejudiced by the late submission.

*Kelly* is distinguishable because the plaintiff there was seeking not the internal affairs report regarding his own incident, but reports concerning similar complaints against the defendant officer by other citizens. This would yield potential witnesses and relevant, admissible evidence. The same cannot be said here. *Miller* ordered an *in camera* inspection of the "internal affairs histories" of the officers to determine what portions, if any, were discoverable.

**Plaintiff's Proposed Compromise**

The parties have already entered into a duly-executed and appropriately-worded Protective Order. Said Order resolves any and all privacy concerns, including the qualified privilege, even though it does not exist. All reports should be produced, un-redacted, and the Plaintiffs should be given the opportunity to conduct additional discovery, both written and depositions, after they have been given the opportunity to review the investigative materials.

**Defendant's Proposed Compromise**

Plaintiffs' request for the internal investigations should be denied.

| | |
|---|---|
| **RAINS LUCIA STERN, PC** | **LEWIS BRISBOIS BISGAARD & SMITH, LLP** |
| /s/ *Joseph R. Lucia* | /s/ *Dana A. Fox* |
| Joseph R. Lucia | Dana A. Fox |
| Attorneys for Plaintiffs | Attorneys for Defendants |